# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **SANDI GORMAN,**<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>**EXPRESS RECOVERY SERVICES, INC.,**<br><br>　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:17CV115DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff Sandi Gorman's Motion for Summary Judgment [Docket No. 27], and Defendant Express Recovery Services, Inc.' Motion for Summary Judgment [Docket No. 30]. On October 17, 2018, the court held a hearing on the motions. At the hearing, Plaintiff was represented by Ryan L. McBride and Defendant was represented by Joseph J. Lico. The court took the motions under advisement. The court has carefully considered the materials submitted by the parties and the facts and law relevant to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

This is an action for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). On September 14, 2015, Plaintiff Sandi Gorman received medical treatment at Tanner Clinic. Gorman had TriCare Medical Insurance and provided her insurance information to Tanner Clinic. Gorman alleges and ERS disputes that Gorman paid her

$12.00 copay to Tanner Clinic at the time of service.

After her visit, Gorman received an explanation of benefits from TriCare stating that TriCare would pay $104.07 for the visit and Gorman was responsible for the $12.00 copay. However, Tanner Clinic sent Gorman repeated bills for payment of $128.07. The bills stated that Gorman owed $116.07 for the September 14, 2015 visit and a $12.00 copay for a July 7, 2015 visit. The invoices were designed in a way to show the amount charged for the services, the amount adjusted based on an insurance agreement, the amount insurance paid, and the amount for which the patient was responsible. The Tanner Clinic invoices sent to Gorman showed that Gorman's insurance had paid its part for Gorman's July 7, 2015 visit, but no copay had been made. The invoices also showed that no payment from Gorman or her insurance had been made with respect to the September 14, 2015 visit. Gorman never responded to Tanner Clinic's billing statements and she alleges that she did not know that Tricare had failed to make its payment to Tanner Clinic for the September 14, 2015 visit.

On January 29, 2016, Tanner Clinic assigned Gorman's account to ERS, a debt collection agency, for collection on the unpaid account. Prior to the assignment, Tanner Clinic and ERS had entered into a contract for ERS to collect delinquent accounts for Tanner Clinic. On February 2, 2016, ERS sent Gorman a letter indicating that it had been assigned her account from Tanner Clinic and providing a validation notice for the Tanner Clinic account. ERS also called Gorman on February 9, 2016, March 4, 2016, March 16, 2016, and March 22, 2016. On March 22, 2016, ERS sent Gorman another collection letter. Gorman did not respond to any of ERS' letters or telephone calls.

On April 13, 2016, ERS had the law offices of Edwin Parry send a validation letter to Gorman. The letter stated that the law firm represented ERS in the collection of the unpaid

account and it gave Gorman thirty days to dispute the validity of the debt. On April 14, 2016, ERS sought confirmation from Tanner Clinic that the debt was correct, due, and owing. On April 27, 2016, a representative from Tanner Clinic signed the confirmation request verifying that the debt was due and owing. The Tanner Clinic representative included an invoice and financial agreement with debt verification. The invoice showed the $12.00 copay due for services on July 7, 2015, the $116.07 due for services on September 14, 2015, and $32.02 due for collection fees for a total amount due of $160.09.

Gorman did not respond to the April 13, 2016 letter from the law offices of Edwin Parry. On May 23, 2016, ERS had Gorman served with a copy of the Summons and Complaint in a state lawsuit for payment of the overdue account. On June 1, 2016, ERS filed its complaint for payment of the account in Utah's Second District Court against Gorman and her late husband. Gorman's late husband died approximately five years ago, long before the services at issue in the case. Gorman did not answer or otherwise respond to the complaint. On June 16, 2016, ERS filed a motion for default, seeking $128.07 owed for services at Tanner Clinic, $4.78 for accrued interest, $92.00 for court costs, $32.02 for collection fees, and $250.00 in attorney fees for a total judgment of $506.87.

On July 13, 2016, the state court granted default judgment against Gorman in the requested amount of $506.87. Although the Default Judgment states that it is "against said defendant(s) jointly and severally," the judgment specifically states that it is "against defendant SANDI GORMAN." There is no indication that the judgment is against her late husband. Despite Gorman's assertions to the contrary, there were no allegations in the state court complaint made specifically against her late husband or additional costs sought against him. He was named because of a Utah statute allowing family expenses to be collected against both

spouses.

On July 7, 2016, a week before the state court entered default judgment against Gorman, Tanner Clinic received payment from TriCare Insurance for $104.00 on Gorman's account. Under the collection agreement between Tanner Clinic and ERS, Tanner Clinic was required to inform ERS of the payment within 72 hours. However, Tanner Clinic did not inform ERS. On July 18, 2016, the law offices of Edwin Parry sent a notice of the state court Default Judgment to Gorman. However, she did not respond.

Neither Tanner Clinic nor Gorman informed ERS of the July 7, 2016 $104.00 TriCare payment until December 6, 2016, when Gorman made her first contact with ERS. ERS contacted Tanner Clinic for confirmation and learned on December 12, 2016, that Tanner Clinic received payment from TriCare on July 7, 2016. ERS notified the law offices of Edwin Parry of the insurance payment and the law firm made an adjustment to the amount Gorman owed under the Default Judgment.

On January 19, 2017, Tyler Allred, an employee of the law offices of Edwin Parry, and Gorman appeared in state court for a supplemental hearing on satisfying the Default Judgment against Gorman. Gorman alleges that she was not informed of the outstanding debt at the hearing. However, at the hearing, Gorman agreed to a payment plan for the outstanding Tanner Clinic debt. Gorman never made any payments on the payment plan agreed to during the supplemental hearing.

On February 22, 2017, Holli Clark, an employee at the law offices of Edwin Parry, received a letter from Plaintiff disputing the debt and asking for a payoff amount. Ms. Clark marked the account as disputed but did not immediately respond to Gorman's request for a payoff amount. The law offices of Edwin Parry assert that they have policies and procedures

requiring employees to provide a payoff amount if requested by a consumer. Ms. Clark testified that she received such training and mistakenly failed to respond in this instance. The law offices of Edwin Parry disciplined Ms. Clark for failing to follow proper procedures with Gorman. Approximately six weeks later, on April 10, 2017, the law offices of Edwin Parry sent a letter to Gorman, addressed to Gorman and her late husband, about payment on the judgment because she had not made any payments on the payment plan. The letter reflected the total amount due and notifying her that a lien will be placed on any real property in her name within the county.

In June 2017, Gorman filed the present lawsuit against ERS in Utah's Second District Court for violation of the FDCPA and the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et seq.* ("UCSPA"). ERS removed the action to this court based on the FDCPA claim.

## DISCUSSION

### Cross Motions for Summary Judgment

The parties motions are essentially mirror images of each other so the court will address them simultaneously. The parties do not dispute that Gorman is a consumer, Defendant is a debt collector, and the dispute involves a debt as defined by the applicable statutes. The only issue is whether ERS violated the FDCPA and UCSPA in its collection efforts against Gorman and, if so, whether the bona fide error defense applies.

**1. FDCPA Claim**

"[C]ourts generally treat the FDCPA as a strict liability statute, despite the bona fide error exception." *Soren v. Equable Ascent Fin., LLC*, 2012 WL 2317362, at *2 (D. Utah June 18, 2012). Because the strict liability standard applies, Gorman need only demonstrate one violation of its provisions to be entitled to a favorable judgment. *Doshay v. Global Credit Collection*

5

*Corp.*, 796 F. Supp. 2d 1301, 1303-04 (D. Colo. 2011). ERS cannot harass, oppress, or abuse a person in connection with the collection of a debt. 15 U.S.C.A. § 1692d. In addition, ERS cannot use false, deceptive, or misleading representation or means in connection with the collection of any debt, such as the false representation of the character, amount, or legal status of any debt. *Id.* § 1692e(2)(A). Moreover, the FDCPA is liberally construed to protect the "least sophisticated consumer." *Clark Capital Credit & Collection Servs.,* 460 F.3d 1162, 1171 (9th Cir. 2006).

Gorman claims that ERS violated multiple sections of the FDCPA by attempting to collect the wrong balance from Gorman on various occasions throughout the pre-litigation, litigation, and post-judgment proceedings. First, Gorman alleges that ERS attempted to collect the wrong balance from her. The parties dispute whether Gorman paid her copay at the time of services. Gorman also argues that there is an extra $12.00 being collected that is inexplicable. But a simple review of the Tanner Clinic invoice shows a $12.00 copay for a July 2015 visit still due and owing. The invoices demonstrate that there is no mystery as to the amounts due.

However, the dispute as to whether the Tanner Clinic debt is correct is irrelevant. ERS may reasonably rely on the information provided to it by Tanner Clinic. *Solomon v. Baer & Timberlake, P.C.* 504 Fed. Appx. 702, 705 (10th Cir. 2012) (defendant could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do). Tanner Clinic assigned Gorman's account to ERS for collection, confirmed the amount that was due and owing, and provided ERS with an invoice detailing the amounts due. ERS reasonably relied on the information from Tanner Clinic. ERS also gave Gorman adequate opportunities to dispute the amount due, but she did not do so. If Gorman had disputed the amount due at the time, ERS may have had a duty to

further inquire into the propriety of the amount due. However, given the facts of this case, there is no basis for Gorman to assert a violation of the FDCPA against ERS for seeking to collect the amounts assigned to it from Tanner Clinic.

Gorman also argues that ERS attempted to collect the wrong balance from her in the state court action. However, when ERS filed its state court complaint and when ERS filed its motion for default judgment, it filed the complaint and motion requesting judgment in the correct amount. Therefore, there are no FDCPA violations in connection with the complaint or motion for default judgment.

But, on July 13, 2016, the court entered default judgment for the full amount requested even though Tricare had paid Tanner Clinic $104.00 on Gorman's account a week earlier. Gorman did not attempt to notify the court or ERS of the payment despite her notice of the lawsuit. In addition, Tanner Clinic failed to notify ERS of the TriCare payment before the state court entered default judgment even though ERS had a contract with Tanner Clinic requiring Tanner Clinic to inform ERS of payment within 72 hours. Given ERS' lack of notice, the court finds that there is no basis for finding a FDCPA violation against ERS based on the amount of the state court default judgment.

Gorman's arguments repeatedly fail to take any responsibility for her lack of communication throughout the process with Tanner Clinic, ERS, and/or the law office of Edwin Parry. Tanner Clinic repeatedly sought payment before assigning the debt to ERS, Gorman was subsequently sent letters on February 2, 2016, March 22, 2016, and April 13, 2016, and ignored multiple telephone calls. Under the FDCPA, each of the letters properly told Gorman that she could dispute the amount of the debt. Gorman did nothing. The FDCPA contemplates that a consumer will participate to some extent. Gorman never disputed any of these communications

at the time. She also failed to defend the state court lawsuit after she was properly served with the summons and complaint. She failed to take advantage of any of her due process or legal rights in the state court action and improperly asks the court to find fault with those proceedings. The court is unwilling to do so.

Gorman argues there was a FDCPA violation when ERS filed an application for a writ of garnishment after it received its state court judgment that included the $128.07 principle debt amount. Gorman argues that seeking garnishment on the wrong amount is a violation of the FDCPA. However, ERS had a valid judgment it was seeking to satisfy and sought garnishment for that amount. Moreover, the garnishment never took place because Gorman was unemployed, and Gorman was not aware of the request for garnishment until this case. There is no basis for finding a violation of the FDCPA in connection with ERS' request for a writ of garnishment.

In addition, Gorman asserts that ERS attempted to collect a higher amount from her because ERS assumed that her late husband was still alive. Gorman contends that the inclusion of her husband in the lawsuit was extremely upsetting and also resulted in a higher balance.[1] However, the state court documents demonstrate that there is no basis for Gorman's assertion that ERS sought to collect more money from her because of the inclusion of her late husband in the state court action. Her assertion misinterprets the relevant documents in the state court action. The debt and costs ERS sought and received are easily identified in the documents. ERS merely relied on a state court statute regarding family expenses that would have allowed it to collect Gorman's debt from her husband. Parry explained at his deposition that Gorman's

---

[1] Gorman did not allege this as a violation in her Complaint. Gorman also confirmed that everything she believed ERS did wrong was contained in her Complaint and she was aware of the contents of the state court complaint when she filed her Complaint in this case.

husband was included in the state court action pursuant to Utah's Family Expense Statute. The complaint in the state court action made it clear that Gorman's late husband was named only in that capacity. If Gorman was still married to her late husband, the claim was valid and not an attempt to deceive or misrepresent the debt. Without any communication from Gorman, it was not possible for Parry to know that her spouse was deceased. Gorman did not incur any additional fees or costs because of the inclusion of her deceased spouse. The cost of service was the same, $17, and court filing fees were the same, $75. The state court action did not attempt to collect anything in addition to what Gorman owed. The state court's Default Judgment was only against Gorman, not both of the named defendants. Moreover, Gorman could have addressed any of the issues surrounding the inclusion of her late husband or amounts due in the state court action but she chose not to participate. Therefore, the court finds there is no basis for finding a FDCPA violation based on the inclusion of Gorman's late husband in the state court action.

Gorman further argues that ERS violated the FDCPA by failing to provide her with a payoff amount at the state court supplemental hearing. Gorman's claim that she was not told the amount due at the supplemental hearing is contradicted by Edwin Parry's testimony and belied by the entry of an agreement for payment of the amount due at the hearing. Nothing supports a violation in connection with the supplemental hearing.

Gorman also argues that ERS violated the FDCPA by failing to provide her with a payoff amount in response to her February 22, 2017 letter to the law offices of Edwin Parry. Gorman, however, had participated in a supplemental hearing in state court a month earlier in which the parties created a payment plan. The payment plan was in effect at the time Gorman sent this letter. She had not made any payments and she would have known the amount due. Although the law firm did not immediately respond with an amount due, the law firm sent her a notice of

the full amount due approximately six weeks after her request. Gorman did not cite to any case law mandating a time requirement. Given her knowledge of the payment plan and ability to participate in the payment plan set up by the state court, the delayed response does not seem unreasonable. Moreover, if Gorman wanted to dispute the payment plan set up in the supplemental hearing before the state court, she could have filed something with the state court. She repeatedly failed to take advantage of any of the process or rights available to her in the state court action. Although the law firm's response to her letter was not in the general course of business, nobody contacted her for payment during that time and there is no allegation that the amount due was changing or that she was being misled or deceived. When the firm contacted her for failing to make payments under the payment plan, it notified her again of the amount due. Therefore, the court finds no basis for finding a violation of the FDCPA based on these facts.

To the extent that the failure of Edwin Parry's employee to respond to Gorman's letter requesting the total amount due is a violation, ERS is entitled to the bona fide error defense. A debt collector may not be held liable "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k©. "Specifically, a debt collector bears a three-part burden of showing that its FDCPA violation (1) was 'not intentional'; (2) was a 'bona fide error'; and (3) occurred despite the maintenance of procedures 'reasonably adapted to avoid such error.'" *See Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011).

In this case, the law office of Edwin Parry has a policy in place to respond to debtors, Ms. Clark testified that the firm trained her in the policy, and the law firm disciplined her for failing to follow the policy. The policy is a reasonable precaution against these types of errors and the

fact that Ms. Clark was disciplined demonstrate an intent to maintain the policy.  Gorman argues that ERS is not entitled to the defense because the mistake demonstrates that the policy was not maintained.  However, that argument would swallow the whole defense.  The defense only looks to see if there is a policy in place to avoid the error that occurred.  It would make no sense to say that the bona fide error defense does not apply because an error occurred.  In fact, the defense only applies when there is an error.  In addition, there is nothing but unsupported speculation that the error could have been intentional.  There is no support for Gorman's contention that her previous telephone call had been contentious.  Gorman herself did not testify that it was at her deposition.  Therefore, even if the failure to respond to Gorman's letter for approximately six weeks was an FDCPA violation, ERS is entitled to the bona fide error defense.

At the hearing on the motions for summary judgment, Gorman identified only four violations of the FDCPA, including a violation in connection with a April 10, 2017 letter from Edwin Parry to Gorman.  Although Gorman vaguely addressed this letter is some of the briefing, she did not previously identify it as one of her specific alleged violations.  The briefing makes mention of many alleged violations that were not discussed at the hearing.  It is unclear to the court if Gorman is still asserting them as violations or if she dropped them after the briefing.  Because of this lack of clarity, the court endeavored to address them all.  Gorman's briefing makes vague allegations regarding several alleged violations or mistakes, but does not specifically identify each violation and fully brief each as an actual issue.  For example, some facts are raised and disputed in the fact section of the brief and then never dealt with in the argument section of the brief.

In any event, Gorman takes issue with the amount due sought in the letter, claiming that the law firm's letter did not give her credit for the previous $104 payment from TriCare.

However, the total amount requested in the letter reflects the payment because the total due was less than the default judgment amount and Gorman had not made any payment on the judgment at that time.

In addition, Gorman takes issue with the inclusion of her late husband on the April 10, 2017 letter. Again, Gorman did not raise this as an issue in her Complaint or a specific FDCPA violation in her briefing. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177-78 (10th Cir. 2007) (court properly restricted its analysis to facts raised in complaint). Gorman does not assert that she was deceived or misled by the inclusion of her husband on the letter, only that she thinks the least sophisticated consumer could have been. However, the facts are clear that Gorman was the only person the court entered judgment against and she was the only person who entered into a payment plan with respect to paying the amount of the judgment. Gorman makes no claim that she feared her late husband had property on which a lien could be placed. While the inclusion of her late husband's name on the letter appears to be a mistake, not every mistake is deceptive or actionable. Although the court does not believe the April 10, 2017 letter was clearly raised a violation prior to the hearing and thus should not be considered, the court also finds that the letter did not rise to the level of an FDCPA violation.

Finally, ERS argues that Gorman relies on the same facts for her 15 U.S.C. § 1692f as she does for her § 1692e allegations. A claim under § 1692f "will be deemed deficient . . . if it 'does not identify any misconduct beyond that which [the plaintiff] assert[s] violates other provisions of the FDCPA.'" *Taylor v. Heath W. Williams, LLC*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) (citations omitted); *Rees v. JPMorgan Chase Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009) ("A complaint warrants dismissal if a plaintiff fails to specifically identify how the conduct was unfair or unconscionable under 15 U.S.C. § 1692f."). Gorman claims that all of her

allegations meet this criteria. However, her failure to specifically identify claims under this section, forecloses her claim. Accordingly, the court concludes that Gorman has failed to demonstrate any FDCPA violations. Therefore, the court grants ERS' motion for summary judgment and denies Gorman's motion for summary judgment on the FDCPA claims.

## 2. UCSPA

The parties agree that under the UCSPA, Gorman is a consumer, ERS is a supplier, and ERS was attempting to collect a consumer debt. A deceptive act or practice under the UCSPA can occur before, during, or after the consumer transaction. Utah Code Ann. § 13-11-4. The UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act. *Martinez v. Best Buy Co.*, 2012 UT App 186; Utah Code Ann. § 13-11-4(2).

In this case, Gorman contends that ERS intentionally and/or recklessly attempted to collect the incorrect amount from Gorman on multiple occasions, Gorman did not have a fair opportunity to dispute what was an incorrect charge in the first place, Gorman was misled based on the information given to her, and ERS' failure to sue for the correct amount was an unconscionable act. As more fully explained above, there is no evidence that ERS intentionally or recklessly attempted to collect an incorrect amount from Gorman. ERS verified the debt from Tanner Clinic. Gorman had multiple opportunities to dispute the debt but chose not to do so. There is no evidence that ERS misled Gorman. The invoices Tanner Clinic sent to Gorman and the letters ERS sent to Gorman were clear and easy to understand. In addition, the amount ERS sought in the state court complaint was correct and verified at the time ERS filed it. Gorman had several opportunities to dispute that amount before the lawsuit was filed and she decided not to have any communication with Tanner Clinic, ERS, or the law offices of Edwin Parry. There is no evidence that the state court complaint was unconscionable. In addition to the verified

13

amount due, ERS sought reasonable costs and fees. For the same reasons set forth above with respect to Gorman's identical FDCPA claims, the court finds that Gorman has failed to establish any violations of the UCSPA. Accordingly, the court grants ERS' motion for summary judgment and denies Gorman's motion for summary judgment on the UCSPA.

## CONCLUSION

Based on the above reasoning, Plaintiff Sandi Gorman's Motion for Summary Judgment [Docket No. 27] is DENIED, and Defendant Express Recovery Services, Inc.' Motion for Summary Judgment [Docket No. 30] is GRANTED. Because this disposes of all remaining claims in the action, the court shall enter judgment and close the case.

DATED this 23rd day of October, 2018.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge